* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant-employer regularly employed three or more employees at all relevant times.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. On March 21, 2003, and April 10, 2003, an employment relationship existed between plaintiff and defendant-employer.
5. On March 21, 2003, and April 10, 2003, plaintiff's average weekly wage was $323.08, which yields a compensation rate of $215.40. *Page 3 
6. The issues to be determined are as follows:
 a. Whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on March 21, 2003;
 b. Whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on April 10, 2003;
 c. Whether plaintiff's current condition is the result of the above-referenced compensable injuries by accident; and,
 d. To what benefits, if any, plaintiff is entitled pursuant to the Act.
7. The parties stipulated into evidence the following exhibits:
 a. Stipulated Exhibit #1: Pre-Trial Agreement
 b. Stipulated Exhibit #2: A Packet of Medical Records
 c. Stipulated Exhibit #3: A Packet of Payroll Records
 d. Stipulated Exhibit #4: A Packet of Answers to Interrogatories
 e. Stipulated Exhibit #5: A Video of Plaintiff's Pre-Hearing Deposition
 f. Stipulated Exhibit #6: A Packet of Financial Documents from Focus Mission
 g. Stipulated Exhibit #7: Surveillance Videos and CD-Roms
8. The depositions of T. Hemanth Rao, M.D., Thomas Gualtieri, M.D., Linda Weeks, Charles Batzel, III, and Barbara Owens were received into evidence following the hearing before the Deputy Commissioner.
 * * * * * * * * * * * *Page 4 
Based upon all the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 47 years of age. Prior to accepting a position with defendant-employer, plaintiff worked at another homeless shelter called Lifeline Outreach. Plaintiff had been a resident of Lifeline and while there, married another resident, his current wife. After marrying, plaintiff worked for Lifeline for approximately one year, in exchange only for room and board, and then began receiving $250.00 a month.
2. Plaintiff was employed by defendant-employer from December 2002 into May 2003 as an associate director. Defendant-employer operates a mission designed for the betterment of homeless men in the Roanoke Rapids area. As an associate director, plaintiff's duties included inspecting the warehouse, making certain the kitchen was clean, setting punishments for the residents, and making certain that defendant-employer's various departments were operating properly.
3. On March 21, 2003, plaintiff sustained an injury while working for defendant-employer when he struck his head on a door. Plaintiff was rushing through a door to speak with Linda Weeks, the wife of the director of defendant-employer, when his foot caught in the door, causing him to hit the left side of his head. Plaintiff testified that after the incident he experienced pain in his left ear and an explosive-type pressure in his head.
4. Following the incident, plaintiff met with Ms. Weeks, who testified that plaintiff appeared to be "fine" throughout the meeting, which lasted approximately 20 minutes. As for possible lingering effects, Ms. Weeks testified that she noticed no change in plaintiff's speech, *Page 5 
behavior, or in his job performance subsequent to the March 21, 2003, incident. Barbara Owens, secretary to Ronald Weeks, also testified regarding plaintiff's condition subsequent to the incident, stating that she observed no changes in plaintiff either while he continued to be employed by defendant-employer or thereafter.
5. Contrary to the testimony of defendants' witnesses, plaintiff contended that he was in severe pain on March 21, 2003, and that he began experiencing chronic headaches subsequent to his accident. Plaintiff acknowledged that he did not immediately report his injury to his supervisor, Mr. Weeks, who was away from the mission at the time of this incident. Mr. Weeks admitted that he knew about plaintiff's injury several days after March 21, 2003. Plaintiff further asserted that he did not receive medical treatment during the period immediately after the March 21, 2003, incident due to defendants' failure to authorize it.
6. The Full Commission expressly finds credible the testimony and statements by plaintiff regarding the March 21, 2003, workplace incident. The Full Commission finds the testimony of Mr. Weeks that is contrary to plaintiff's on these issues to be lacking in credibility, largely based upon Mr. Weeks' attempt to impeach plaintiff's character. Additionally, Ms. Dorothy Hunt, the director of Lifeline, plaintiff's former employer, testified that just prior to the Deputy Commissioner's hearing, Mr. Weeks came to see her after several months of no contact and attempted to secure from her derogatory statements about plaintiff and his character. Moreover, due to Mr. Weeks' apparent efforts to improperly influence the testimony of defendants' other witnesses, the testimony of said witnesses regarding the circumstances and consequences of the March 21, 2003, workplace incident is given little weight by the Full Commission. *Page 6 
7. The incident on March 21, 2003, constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. On March 21, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
8. On April 10, 2003, plaintiff sustained a second injury when he struck his head on a low-hanging heater in the thrift store that was operated by defendant-employer. Plaintiff's pain was so severe that he sat in his office for at least three hours attempting to regain his composure. Charles Batzel, manager of the thrift store, testified that although he did not visually observe the incident because his back was turned to plaintiff, he did hear a noise and saw plaintiff holding his head.
9. Mr. Batzel testified that, subsequent to the incident on April 10, 2003, he continued working with plaintiff on a daily basis and noticed no changes in plaintiff's behavior or speech. Mr. Batzel further stated that he never heard plaintiff complain of headaches following this incident. Ms. Weeks testified that she also regularly interacted with plaintiff following April 10, 2003, and she never heard him complain of any problems associated with either that incident or the earlier one on March 21, 2003.
10. The Full Commission expressly finds plaintiff credible regarding the April 10, 2003, workplace incident. The Full Commission finds the testimony of Ronald Weeks to be lacking in credibility. Additionally, the Full Commission gives little weight to the testimony of defendants' other lay witnesses regarding the April 10, 2003, incident.
11. The incident on April 10, 2003, constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected *Page 7 
consequences. Therefore, on April 10, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
12. Following his April 10, 2003, injury by accident, plaintiff was directed by defendant-employer to seek treatment at Prime Care Medical Center. At that facility, plaintiff was examined by Wayne Tamberelli, PA-C, who diagnosed plaintiff as having a post-concussive syndrome. Mr. Tamberelli subsequently referred plaintiff to a neurologist.
13. On May 19, 2003, plaintiff resigned from employment with defendant-employer and, on May 26, 2003, began working as the executive director of the Welcome Rescue Mission.
14. On June 19, 2003, plaintiff was examined by Dr. T. Hemanth Rao, a board certified neurologist. Dr. Rao diagnosed plaintiff as having a closed head injury and post-concussive syndrome. Dr. Rao recommended an MRI with and without contrast, which revealed small sclerotic changes, a condition Dr. Rao explained was not a cause of plaintiff's symptoms. On July 22, 2003, plaintiff returned to Dr. Rao and reported a recurrence of headaches, a symptom that Dr. Rao stated is consistent with a closed head injury. On August 28, 2003, Dr. Rao opined that, due to plaintiff's work-related head injuries and related symptoms, plaintiff was unable to return to gainful employment. On that date, Dr. Rao recommended that plaintiff not return to work in any capacity until completion of a closed head injury treatment program.
15. Plaintiff ceased working for the Welcome Rescue Mission on August 29, 2003, when it was sold to a for-profit corporation. However, despite the recommendation of Dr. Rao, plaintiff and others set up their own non-profit mission, the Focus Mission, in September 2003, for which plaintiff served as executive director on a volunteer basis. The Focus Mission eventually closed by June 2004, due to lack of funds. The Full Commission finds, based upon the credible evidence of record, that plaintiff's attempt to work as volunteer executive director *Page 8 
for the Focus Mission fails to demonstrate that plaintiff retained any wage earning capacity in the competitive marketplace following August 29, 2003.
16. On the issue of causation, Dr. Rao opined that plaintiff's memory problems, confusion, non-fluency of speech, personality changes, and headaches were causally related to plaintiff's March 21, 2003, and April 10, 2003, injuries by accident.
17. Dr. Thomas Gualtieri also testified on the issue of causation in this matter. However, the Full Commission gives greater weight to the opinions of Dr. Rao, the treating physician, than to Dr. Gualtieri who never examined plaintiff and whose opinions were based upon incomplete medical records. Additionally, Dr. Gualtieri admitted during his deposition that he had no knowledge of plaintiff's second injury occurring on April 10, 2003.
18. The Full Commission finds, based upon the credible evidence of record, that as the direct and natural result of, and causally related to, plaintiff's March 21, 2003, injury by accident and his April 10, 2003, injury by accident, plaintiff sustained a closed head injury resulting in memory problems, confusion, non-fluency of speech, personality changes, and headaches.
19. Prior to Dr. Rao's recommendation that plaintiff undergo a closed head injury treatment program, defendants had authorized, scheduled, and paid for all medical treatment related to plaintiff's injuries. Subsequent to Dr. Rao's treatment recommendation, and without contrary medical documentation, defendants summarily denied plaintiff's claim stemming from his March 21, 2003, injury by accident. The Full Commission finds, based upon the credible evidence of record, that defendants' denial of plaintiff's claim was unreasonable and in bad faith, and that defendants' defense in the present action is based upon stubborn, unfounded litigiousness. *Page 9 
20. Defendants had actual notice of plaintiff's April 10, 2003, injury by accident on the date of its occurrence. Nonetheless, to date, no Industrial Commission form accepting or denying this claim has been filed.
21. There is insufficient evidence of record to find that defendants' witnesses violated the Deputy Commissioner's sequestration Order.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On March 21, 2003, plaintiff sustained a compensable injury by accident arising out of and within the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. On April 10, 2003, plaintiff sustained a second compensable injury by accident arising out of and within the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. As the direct and natural result of, and causally related to, plaintiff's March 21, 2003, injury by accident and his April 10, 2003, injury by accident, plaintiff sustained a closed head injury resulting in memory problems, confusion, non-fluency of speech, personality changes, and headaches. N.C. Gen. Stat. § 97-2(6).
4. As the result of his March 21, 2003, and April 10, 2003, injuries by accident and related conditions, plaintiff was incapable of earning the wages which he was receiving at the time of his injury in the same or any other employment, rendering him totally disabled from *Page 10 
employment in the competitive marketplace. N.C. Gen. Stat. § 97-2(9);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
5. As a result of his total disability due to his March 21, 2003, and April 10, 2003, injuries by accident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $215.40 per week for the period of August 30, 2003, through the present, and continuing until such time as plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
6. As the result of his March 21, 2003, and April 10, 2003, injuries by accident, plaintiff is entitled to have defendants pay for all related medical expenses including the eight-week closed-head injury program and any other treatment as recommended by Dr. Rao. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Based upon the evidence of record, plaintiff is not entitled to an award of compensation pursuant to N.C. Gen. Stat. § 97-31(24) for injuries or damage to his "head."
8. Because their defense of plaintiff's claim in I.C. No. 362657 and actions during litigation were unreasonable and indicative of stubborn, unfounded litigiousness, defendants are subject to sanctions in the form of attorney's fees for counsel for plaintiff. N.C. Gen. Stat. § 97-88.1.
9. Due to defendants' failure to file proper forms in I.C. 405012 as required by the North Carolina Workers' Compensation Act and Workers' Compensation Rules of the North Carolina Industrial Commission, defendants are subject to a sanction in the amount of $500.00 to be paid to the Industrial Commission. N.C. Gen. Stat. § 97-18; Workers' Compensation Rules of the North Carolina Industrial Commission, Rules 802 and 601.
 * * * * * * * * * * * *Page 11 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $215.40 per week for the period of August 30, 2003, through the present, and continuing until such time as plaintiff returns to work or until further order of the Commission. The amount of compensation that has already accrued shall be paid to plaintiff in a lump sum. This compensation is not subject to an attorney's fee, but shall be paid entirely to plaintiff.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his March 21, 2003, and April 10, 2003, injuries by accident, including the eight-week closed-head injury program and any other treatment as recommended by Dr. Rao.
3. Defendants shall pay, as a sanction pursuant to N.C. Gen. Stat. § 97-88.1, a reasonable attorney's fee of 25% of the compensation awarded herein to plaintiff. Said attorney's fee shall be paid inaddition to the compensation awarded to plaintiff in Paragraph 1 above, and shall not reduce the amount of plaintiff's compensation. The amount of the attorney's fee that has already accrued shall be paid to plaintiff's counsel in a lump sum. Thereafter, plaintiff's counsel shall receive a fee in the amount of every fourth check of plaintiff's compensation, to be paid to plaintiff's counsel concurrently with and in addition to every fourth check provided to plaintiff.
4. For violating the North Carolina Workers' Compensation Act and Workers' Compensation Rules of the North Carolina Industrial Commission in I.C. 405012, defendants shall pay a sanction in the amount of $500.00 to be paid by check payable to the North Carolina *Page 12 
Industrial Commission and forwarded to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
5. Defendants shall pay the costs.
This the 23th day of March, 2007.
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
NOT AVAILABLE FOR SIGNATURE
 _______________ THOMAS J. BOLCH COMMISSIONER *Page 1